DREW, Justice
(dissenting).
It is true, as pointed out in the opinion of Associate Justice Murphree, that “accessory uses” are defined in the zoning ordinance of Miami Beach as “uses customarily incident to the principal uses as permitted, but not including any commercial activity.” It must be observed, however, that this definition is found in Section 1 of the ordinance where the phrase “accessory uses” as well as many other phrases used in the zoning ordinance is defined. The only purpose of Section 1 is to define the general phrases used in the ordinance itself.
The use of the property on which the subject hotel is located is governed by Section 5 and 5% of the ordinance. As far as those uses are concerned, “accessory uses” are expressly restricted to such uses “for tenants only.” Sub-section 9 of Section 5 provides that the building on the premises shall be used only for certain specified purposes and “accessory uses for tenants only." (Emphasis added.) So far as a permissible accessory use in the hotel involved in this proceeding is concerned, whether it is commercial in its nature is unimportant. As ? matter of fact, as I conceive it, such acces *628 sory use could be commercial in its nature in its broadest sense, if restricted to the use of the tenants in the hotel. For example, a clothes pressing business for tenants. Moreover, the use of the phrase “commercial activity” in the definitions in Section 1 is not used there in the significance referred to in the opinion of Associate Justice Murphree. What the phrase as defined in Section 1 means is that such accessory use must be a use customarily incident to the principal uses as permitted. I think a laundry in a hotel for its own uses is as incident to the operation of the hotel as the operation of an automatic washing machine in a residence, for the linens of the household, is incident to a residence.
It is clear from the record in this case that the ordinance in question is being violated. The operation of the laundry in the hotel if confined to its own linens used by its tenants is a permissible use under the ordinance. I cannot see how it can be logically contended however that the laundering of the linens of another hotel could be incidental to the operation of the subject hotel or for the use of its tenants. The opinion of Associate Justice Murphree seems to attach some significance to the fact that the two hotels “have an ownership in common of greater than fifty percent.” I cannot see how this can make any conceivable difference; and I think that a consideration of such fact involves an unrealistic approach to the problem. Zoning concerns uses of specific buildings and lots, and not primarily their ownership. See Abbadessa v. Board of Zoning Appeals, 134 Conn. 28, 54 A.2d 675, 677. Stock ownership may change overnight. Corporate entities are recognized as legal entities. Moreover, if the principle announced in the main opinion with respect to this fact is sound, it would be a simple matter for a hotel of one thousand rooms to buy a hotel of ten rooms and use the ten room hotel as the laundry for the one thousand room hotel. This would effectively destroy the very purpose of the subject provision of the zoning ordinance and could well create havoc in the administration of zoning regulations. Under this theory if one corporation owned a dozen hotels, it would be permissible to launder the linens of all hotels in any one of them. This would result in irreparable harm to the neighborhood of the hotel where the laundry was operated, and adversely affect the general welfare.
It may well be in this, as in many other zoning problems, little harm would result to the City in doing the laundry for both hotels under the circumstances in this record. But this is a matter, as I view it, over which neither the lower court nor this Court has any control. This and all of the other courts of the Nation recognize the validity of zoning laws and regulations and have held them to be proper subjects of the exercise of the police power. The ordinance itself is either valid or invalid as applied to a particular situation and this should be and is the extent of our inquiry. I do not think the lower court had a right to enjoin the enforcement of this ordinance because of its view that the City “is seeking, arbitrarily, to make an impractical application of an ordinance, not justified by the related circumstances.” For us to approve such a decree would be to recognize the right of the courts to administer the provisions of such ordinances. Such has never been the function of the courts. This is the kind of reasoning that we condemned in City of Miami Beach v. Hogan, Fla., 1954, 63 So.2d 493, 495, when, speaking through Mr. Justice Mathews, we said:
“If the Courts adopt the policy of substituting their judgments for that of city officials, simply because of their refusal to rezone the property in accordance with the wishes of the landowner to increase the value of the land, they will eventually become the zoning boards for every county and municipality in the State.”
I do not think the municipal authorities charged with the duty of enforcing zoning ordinances should be compelled in every instance — or even allowed — to determine, except under appropriate procedures, whether an ordinance should be enforced in particular cases or particular situations. If we approve such procedure, we would soon destroy the concept of a government of laws.
*629 The legal proposition presented here is exactly the same as that which would be presented if an owner sought a permit to build a building closer to a street than the ordinance allowed. Surely the court would not have any right to say that because the proposed building encroached just a foot or two over the line it presented an “impractical application of an ordinance not justified by related circumstances.” The court would have a right to say that the ordinance was valid or invalid or that, as applied to the particular property, it was arbitrary and unreasonable and, therefore, unconstitutional, but it would have no right to temporize or to cut the pattern to fit the case.
I, therefore, most respectfully dissent from the main opinion. It is my view that the decree appealed from should be vacated and set aside and that a decree should be entered enjoining the subject hotel from operating a laundry except for the uses of its own tenants. Compare New York Ambassador, Inc., v. Board of Standards, Etc., 305 N.Y. 791, 113 N.E.2d 302.